**Bufkin R. FAIRCHILD, Appellant,**

v.

**Jack A. POE, d/b/a Poe Roof Co.,**
**Appellee.**

**No. 17063.**

United States Court of Appeals
Fifth Circuit.

Sept. 22, 1958.

Rehearing Denied Oct. 27, 1958.

---

Marion E. Sibley, Miami Beach, Fla., Irving M. Tullar, Washington, D. C., Jack Lawrence King, Miami Beach, Fla., Jack M. Turner, South Miami, Fla., Sibley, Grusmark, Barkdull & King, Miami, Beach, Fla., for appellant.

Robert L. Achor, Miami, Fla., Eaton & Achor, Miami, Fla., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

This is a patent infringement suit. The district court found that there was anticipation and public use and sale of the process embodied in the plaintiff's Fairchild Patent No. 2,768,101. The patent was therefore null and void. The court held that the defendant Poe, doing business as Poe Roof Company, was not guilty of an infringement. We affirm the judgment.

The appeal presents the question: Was there prior anticipation and public use and sale of the process covered by the Fairchild Patent?

The plaintiff's patent covers a process for creating a knife-like cutting action from a high velocity, low volume water spray to remove incrustation from building surfaces. Fairchild characterized this as a "linear line fan spread spray". In plain language, the process involves nothing more than the use of ordinary tap water under high pressure (from 600 to 1500 pounds per square inch) for cleaning buildings. A somewhat similar effect can be obtained by partially covering the nozzle of a garden hose.

■ A look at the file wrapper history of the Fairchild Patent and an analysis of the record convince us that the district court did not err on the question of anticipation. The plaintiff's first application for letters patent was made in March, 1953. This claim was rejected for lack of invention in view of the Sloan Patent. The original patent application was amended, and on January 18, 1955, the claim was rejected because of the Evans Patent. The application was amended a second time, and on July 20, 1955, the claim was again rejected; this time because of the Edwards Patent. On the file wrapper, the Patent Office stated, "this action is made final". Sloan's patent covered a process for cleaning a cement surface with a high pressure water spray. The Edwards Patent was for removing bark from logs with high pressure water spray. The Evans Patent was for cleaning scales from steel surfaces with a high pressure water spray. The plaintiff filed a second application

on October 14, 1955. After a series of amendments and rejections, the second application was finally accepted because of the amendment that added the words "linear line" in front of the phrase "fan spread spray".

The file wrapper history of the plaintiff's patent, and the record, give us a clear picture of the prior state of the art. James Johnson, of Spraying Systems Company, testified that his organization had been using a nozzle that produced a fan shaped linear spread since 1948. The spray was used for "tearing scales off the steel sheet". Harry Tane, who had been in the business of cleaning buildings for about ten years, testified that his company used a hydro-pneumatic process, which is "a system of forced water pressure through a nozzle directed at incrustations, wherever they happen to be, and used against the incrustations to remove them". The district court found that the process embodied in the Fairchild Patent had been sold, anticipated, and in use for more than one year prior to the plaintiff's first application for patent.

■ In patent cases, as in all civil suits, we are governed in our review of cases by Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A. Hazeltine Research v. Admiral Corp., 7 Cir., 1950, 183 F.2d 953, certiorari denied 340 U.S. 896, 71 S.Ct. 239, 95 L.Ed. 650. The findings of the trial court are not clearly erroneous; on the contrary, we agree with the trial court and affirm its judgment.

■ Under 35 U.S.C.A. § 102(b), an applicant is not entitled to a patent if the invention is in public use more than one year prior to the application date. Of course, there is a presumption of validity which attends the grant of letters patent by the Patent Office, but this presumption may be overcome if invalidity is proved beyond a reasonable doubt. Hunt Tool Co. v. Lawrence, 5 Cir., 1957, 242 F.2d 347; Cameron Iron Works v. Stekoll, 5 Cir., 1957, 242 F.2d 17. The record leaves no doubt in our minds as to the invalidity of the Fairchild Patent.

The prior state of the art was such that already there existed known and successful uses for high pressure water in cleaning surfaces.

The plaintiff argues that the prior processes were not identical with the Fairchild Patent, and that "* * * a process is not anticipated by apparatus which may be used to carry out the process". City of Milwaukee v. Activated Sludge, 7 Cir., 1934, 69 F.2d 577, 588, certiorari denied 293 U.S. 576, 55 S.Ct. 87, 79 L.Ed. 673. We agree with this principle, but it has no application to this case. What we have here is a state of art with prior successful processes which have in fact carried out the function of the Fairchild Patent.

■ The essence of patent anticipation cases lies in the fact that the *inventive thought* in both the anticipating and patented devices is the same, not merely that one process might possibly perform another function. Walker on Patents, Section 51, p. 274. "Where a patent includes a combination of elements, it is not necessary to establish anticipation that all of the elements be found in a single earlier patent or in a single device previously in general use. It is enough if the evidence, taken as a whole, discloses that all of the claimed elements are found in different prior patents in the art or in different devices previously in general use, *and no new functional relationship arises from their combination*." Lyman Gun Sight Corp. v. Redfield Gun Sight Corp., 10 Cir., 1936, 87 F.2d 26, 28. Tested by this doctrine, the process embodied in the Fairchild Patent must fall under the defense of anticipation. The plaintiff seeks to combat this defense by a showing of the commercial success of the patent. We do not doubt its success or acceptance in the art. Mere commercial success,

however, will not create patentability. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162. Something more is needed. Courts have described this evasive quality as "creative", or as revealing "genius". See Jungersen v. Ostby & Barton Co., 1949, 335 U.S. 560, 69 S.Ct. 269, 93 L.Ed. 235; Cuno Engineering Corp. v. Automatic Devices Corp., 1941, 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58. The defense of anticipation in the art precludes this creative genius that is so essential to patentability.[1] The testimony of Johnson and Tane, and the file wrapper history of the patent conclusively establish anticipation in the art. The Fairchild Patent is therefore null and void.

■ The plaintiff complains that the district court erred in allowing the testimony of Johnson, Tane, and Border because the requisite 30 day pre-trial notice that such testimony would be made was not given by the defendant. The point is not well taken. 35 U.S.C.A. § 282 provides in part:

"* * * In actions involving the validity or infringement of a patent the party asserting invalidity or noninfringement shall give notice in the pleadings or otherwise in writing to the adverse party at least thirty days before the trial, of the country, number, date, and name of the patentee of any patent, the title, date, and page numbers of any publication to be relied upon as anticipation of the patent in suit or, except in actions in the United States Court of Claims, as showing the state of the art, and the name and address of any person who may be relied upon as the prior inventor or as having * * * previously used or offered for sale the invention of the patent

---

1. "This conception [of creative discovery or genius] has been particularly helpful in the evaluation of those discoveries in the field of mechanics which have involved only combinations of old and familiar elements and ideas. When, if ever, can such combination be said to add to scientific knowledge? The reasonable and accepted answer is if, but only if, the particular combination yields some surprising or extraordinary results." Packwood v. Briggs & Stratton Corp., 3 Cir., 1952, 195 F.2d 971, 973.

in suit. In the absence of such notice proof of the said matters may not be made at the trial *except on such terms as the court requires."*

Instead of giving 30 days notice, the defendant gave 12 days notice, and the court allowed it to stand. The statute clearly gives the trial judge the right to exercise his discretion on the admissibility of such evidence at the trial. This he did. "The notice provision in the statute is salutary. It should be encouraged, but the rule requiring it has its exceptions. The determination when the exception should be ruled rests within the discretion of the trial judge." Johnson Co. v. Stromberg, 9 Cir., 1957, 242 F.2d 793, 797. The trial judge did not abuse the discretion vested in him by the statute.

The judgment is

Affirmed.