NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-5067

MULTISERVICE JOINT VENTURE, LLC,

Plaintiff,

and

JANICE DAVIS,

Sanctioned Party-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

<u>Janice Davis</u>, Davis & Steele, of Washington, DC, pro se.

<u>Matthew H. Solomson</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for defendant-appellee.  With him on the brief were <u>Tony West</u>, Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Martin F. Hockey, Jr.</u>, Assistant Director.

Appealed from:  United States Court of Federal Claims

Judge Thomas C. Wheeler

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-5067

MULTISERVICE JOINT VENTURE, LLC,

Plaintiff,

and

JANICE DAVIS,

Sanctioned Party-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in 06-CV-312, Judge Thomas C. Wheeler.

_____

DECIDED:  May 6, 2010

_____

Before RADER, GAJARSA, and PROST, <u>Circuit Judges</u>.

PER CURIAM.

The United States Court of Federal Claims awarded attorney fees and costs as a monetary sanction against Plaintiff Multiservice Joint Venture, LLC's ("MJV's") counsel, Janice Davis, for intentional spoliation of evidence.  Ms. Davis moved for reconsideration because the court did not consider her inability to pay the imposed sanction.  The court determined that because she failed to raise the argument in her opposition to the government's application for attorney fees and costs, she waived it.

Ms. Davis appeals the award of sanctions and the denial of her motion for reconsideration. Because the court did not abuse its discretion in imposing reasonable attorney fees and costs or in finding Ms. Davis waived her inability to pay argument, we affirm.

I

The case arises from a contract dispute in connection with MJV providing janitorial services for the United States Naval Academy. MJV sued the United States for breach of contract under the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. § 601 et seq., in the Court of Federal Claims. The United States filed an answer and counterclaims, alleging MJV filed fraudulent claims in violation of the False Claims Act, 31 U.S.C. § 3729 et seq.; the Forfeiture of Claims Statute, 28 U.S.C. § 2514; and the fraud provisions of the CDA, 28 U.S.C. § 604.

The government, through its counsel Matthew Solomson, deposed George W. Tolson, Jr., a general manager of MJV. At the deposition, Mr. Tolson was accompanied by Ms. Davis and several Plaintiff's representatives. The government provided Mr. Tolson a clean, stapled copy of an exhibit marked "GWT 4," which was Defendant's Amended Answer and Counterclaim, and two stapled courtesy copies of the exhibit to Plaintiff's counsel. Mr. Solomson saw Mr. Tolson write, inter alia, "agree" and "no info" on the exhibit next to some of the government's factual allegations with a blue ink pen. After a break during which Ms. Davis carried a folder to the restroom, Mr. Solomson discovered that the staple was missing from Mr. Tolson's exhibit and two pages that originally appeared to be annotated, including the page(s) marked with the words "no info," had been replaced with clean, unmarked pages. All of Plaintiff's representatives

denied removing the staple, and Ms. Davis refused to show Mr. Solomson the two intact courtesy copies of the exhibit.

After providing Plaintiff and Plaintiff's counsel several opportunities to produce the missing pages, the government filed a motion for sanctions based on spoliation of evidence. The court held an evidentiary hearing in which it heard testimony from the deposition participants, and determined that the court reporter's and a Department of Justice secretary's testimony was more credible than that of Plaintiff's witnesses. Mr. Tolson admittedly wrote "no info" when he annotated the exhibit, but he could not explain why those markings were no longer present. The court found Plaintiff's failure to offer any explanation for the alteration of Exhibit GWT 4 particularly problematic when the alteration could have only been done by Plaintiff's representatives or counsel and thus determined Plaintiff's affront to the court was punishable.

Based on the its inherent authority to enter sanctions under Rule 37 of the Rules of the United States Court of Federal Claims ("RCFC") and 28 U.S.C. § 1927, the Court of Federal Claims granted the government's motion for sanctions. The court imposed (1) an evidentiary sanction against MJV by precluding Mr. Tolson from testifying as a witness on its behalf, and (2) a monetary sanction against Plaintiff's counsel for the government's reasonable attorney fees and costs in connection with the motion and deposition. The court afforded the government the opportunity to apply for its attorney fees and costs and for Ms. Davis to respond if "Plaintiff wishes to challenge any portion of Defendant's application, or if there are any mitigating factors that Plaintiff would like the Court to consider." Multiservice Joint Venture, LLC v. United States, 85 Fed. Cl. 106, 114 (2008). After considering the parties' submissions, the court awarded

$13,112.00 in attorney fees and costs for the government's preparation of the motion for sanctions and for its taking and ordering Mr. Tolson's deposition against Ms. Davis to be paid on March 5, 2009.

After failing to make any payments to the government on April 3, 2009, Ms. Davis moved for reconsideration of the monetary sanction solely based on her inability to pay in light of our court's March 24, 2009 decision in Clearvalue, Inc. v. Pearl River Polymers, Inc., 560 F.3d 1291 (Fed. Cir. 2009). The court denied her motion, finding her argument had been waived. Ms. Davis appeals. We have jurisdiction under 28 U.S.C. § 1295(3).

II

On appeal, Ms. Davis challenges the imposition of the attorney fees and costs sanction as well as the quantity of the amount awarded. We address each challenge in turn.

We review a trial court's imposition of sanctions for abuse of discretion. See, e.g., Clearvalue, 560 F.3d at 1304 (reviewing sanctions under Fed. R. Civ. P. 37); 1-10 Indust. Assocs. v. United States, 528 F.3d 859, 867 (Fed. Cir. 2008) (reviewing sanctions under Rule 11 of the RCFC). When reviewing factual findings, we give great deference to the trial court's decision regarding witness credibility. See Medichem, S.A. v. Rolabo, S.L., 437 F.3d 1157, 1171 (Fed. Cir. 2006).

With regard to her challenge to the imposition of sanctions, Ms. Davis asserts that the trial court abused its discretion in granting the government's spoliation motion because (1) it failed to consider that the two courtesy copies remained intact and therefore she had no means of altering the original exhibit and (2) the government failed

to allege and prove that the purportedly tampered deposition copy had any possible relevance to a defense or counterclaim. We disagree.

First, Ms. Davis argues that her submission of the two intact courtesy copies for in camera review undermines the government's assertion that Plaintiff or Plaintiff's counsel altered the deposition exhibit. Whether the two courtesy copies remained intact, however, is not relevant to the fact that the Exhibit GWT 4 was altered. Rather, that they were intact at the time of the evidentiary hearing does not prove or disprove anything with respect to the exhibit Mr. Tolson annotated. It certainly is not sufficient to undermine the court's unchallenged specific factual findings that the while the document was in Plaintiff's possession during the deposition, the document had become unstapled, and two pages upon which Mr. Tolson made markings had been removed and replaced with clean copies of the initial document.

Moreover, even if, as Ms. Davis argues, the courtesy copies were intact at the time of the evidentiary hearing, it does not explain what happened to the page(s) Mr. Tolson admittedly marked with the words "no info." Further, Ms. Davis does not dispute that upon Mr. Solomson's demand, she failed to produce the courtesy copies provided to Plaintiff during the deposition, or that copies of the exhibit or its individual pages could have been easily produced by printing a new one from the electronic filing system known as PACER. Therefore, we conclude that Ms. Davis fails to show the court abused its discretion when it did not consider Plaintiff's intact courtesy copies submitted for in camera review.

Second, Ms. Davis argues, relying on Eaton Corp. v. Appliance Valves Corp., 290 F.2d 874 (Fed. Cir. 1986), that the court abused its discretion in awarding sanctions

because the government failed to show that the purportedly tampered deposition copy had any possible relevance to a defense or counterclaim. In Eaton, we explained that the test for an adverse inference sanction—a finding of evidence destruction and bad faith by the destructive party—was inapplicable where the destruction of evidence was harmless because it had already been produced. 290 F.2d at 878. Unlike Eaton, the missing evidence here—Mr. Tolson's complete annotated exhibit copy—has never been produced by Plaintiff or Plaintiff's counsel. Despite numerous opportunities, Ms. Davis failed to explain what had happened, or to produce the missing pages of the tampered deposition copy, which involved the general manager's knowledge surrounding the government's allegations in its counterclaims and thus was directly related to the development of the government's case. Moreover, the court here found that MJV and Ms. Davis's conduct was in keeping with an intentional cover up rather than a good faith effort to correct and explain a misunderstanding. Multiservice Joint Venture, 85 Fed. Cl. at 113. We therefore agree with the government that Ms. Davis's reliance on Eaton is misplaced. The court heard the parties' arguments at length and carefully weighed the evidence before deciding to award sanctions pursuant to its inherent authority under Rule 37 of the RCFC and 28 U.S.C. § 1927. Ms. Davis does not challenge the court's factual findings in this regard. Accordingly, Ms. Davis fails to show that the court abused its discretion in awarding monetary sanctions against her.

With respect to the amount of the sanctions awarded, Ms. Davis asserts that the court abused its discretion in awarding the government commercial market rates, as opposed to expenses actually incurred, for attorney fees and costs. We have, however, distinguished between statutes that provide the reimbursement of fees and costs

"actually incurred" with those "incurred." <u>Raney v. Fed. Bureau of Prisons</u>, 222 F.3d 927, 934 (Fed. Cir. 2000). RCFC 37(b)(2)(C) and 28 U.S.C. § 1927, the provisions under which Ms. Davis was sanctioned, explain that the sanctioned party must pay the reasonable expenses, including attorney fees, "incurred." The language implicated here has been uniformly interpreted to require the payment of "market-rate" fees, which are "those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." <u>Blum v. Stenson</u>, 465 U.S. 886, 896 n.11 (1984); <u>Raney</u>, 222 F.3d at 932-33; <u>Pac. Gas & Elec. Co. v. United States</u>, 82 Fed. Cl. 474, 487-88 (2008).

In addition, Ms. Davis argues that the court abused its discretion when including an award of fees and costs associated with preparing for the deposition at issue and the deposition transcript. We disagree. Nothing in the rules at issue limits sanctions to fees and costs exclusively tied to the pursuit the motion for sanctions. We conclude that the court did not abuse its discretion in awarding attorney fees and costs associated with preparing for and ordering a deposition marred by spoliation. Indeed, the government wasted its time and money deposing a witness now barred from testifying on Plaintiff's behalf and ordering the deposition transcript, which was the subject of the government's underlying motion. Accordingly, Ms. Davis fails to demonstrate that the court abused its discretion in awarding commercial market rates in connection with preparing for the deposition, the deposition transcript, or the motion itself.

III

On appeal, Ms. Davis separately challenges the court's denial of her motion for reconsideration. We review the court's denial of Ms. Davis's motion for reconsideration

pursuant to RCFC 59(a)(1) for an abuse of discretion. Parsons ex rel. Linmar Prop. Mgmt. Trust v. United States, 174 F. App'x 561, 562 (Fed. Cir. 2006); Yuba Natural Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990). The burden on the moving party is high and a motion for reconsideration is not intended merely to give an unhappy litigant an additional opportunity to persuade the court to accept its arguments. See Citizens Fed. Bank, FSB v. United States, 53 Fed. Cl. 793, 794 (2002). "Rule 59 of the United States Court of Federal Claims permits reconsideration for one of three reasons: (1) that an intervening change in the controlling law has occurred; (2) that previously unavailable evidence is now available; or (3) that the motion is necessary to prevent manifest injustice." Parsons, 174 F. App'x at 563. Ms. Davis fails to demonstrate that any of these limited grounds for reconsideration apply in this case.

Ms. Davis asserts that the court erred in failing to reconsider the monetary sanction award solely on the grounds it should have considered her inability to pay in light of our decision in Clearvalue, which she argues serves as an intervening change in the controlling law. The court found that she waived this argument when she failed to raise it as a mitigating factor in response to the government's application for attorney fees and costs. We agree.

After the court determined that a monetary sanction against Ms. Davis was appropriate, the court provided Ms. Davis with the opportunity to challenge the government's application for attorney fees and costs and present any mitigating factors. Ms. Davis did not raise her "inability to pay" defense at that time. Rather, two months after the court issued its monetary sanctions award and nearly one month after the court's deadline to pay the sanctions, she raised this argument by way of a motion for

reconsideration. She based her motion on our recent decision in <u>Clearvalue</u>, where we found that the district court abused its discretion in failing to consider counsel's inability to pay when holding him jointly and severally liable with his client for attorney fees under RCFC 37 in the amount of $121,107.38, an amount four times counsel's reported net income for the previous fiscal year. 560 F.3d at 1305-06. Ms. Davis can only succeed on this ground if <u>Clearvalue</u> was an intervening change in the controlling law in our circuit.

Ms. Davis, however, concedes that the principle of a party's ability to pay was one of first impression in <u>Clearvalue</u> and it was not a decision contrary to the law of this circuit. Further, this argument was not novel. As the Court of Federal Claims and our decision in <u>Clearvalue</u> explained, many circuit courts considered and recognized an inability to pay a monetary sanction prior to <u>Clearvalue</u>'s issuance. Accordingly, Ms. Davis fails to establish that <u>Clearvalue</u> introduced an intervening change in the controlling law or that the court abused its discretion in denying her motion for reconsideration on the grounds that she waived her inability to pay argument.

IV

Because the court did not abuse its discretion in awarding reasonable attorney fees and costs as a monetary sanction against Ms. Davis or denying her motion for reconsideration, we affirm.